# No. 22-60610

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**J.D. ABRAMS, L.P.,**

**Petitioner,**

**v.**

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
JULIE A. SU, ACTING SECRETARY,
U.S. DEPARTMENT OF LABOR,**

**Respondents.**

_____

On Petition for Review of a Final Order of the
Occupational Safety and Health Review Commission

**BRIEF FOR RESPONDENT SECRETARY OF LABOR**

_____

SEEMA NANDA
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
    Occupational Safety and Health

LOUISE M. BETTS
Acting Counsel for Appellate Litigation

JOSEPH M. BERNDT
Senior Attorney

JORDAN LARIS COHEN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(646) 264-3614

May 15, 2023

## Certificate of Interested Persons (5th Cir. R. 28.2.1)

The undersigned counsel certifies that the Secretary of Labor is not a "private (non-governmental) part[y]" required under Fifth Circuit Rule 28.2.1 to submit a certificate of interested persons, or a "nongovernmental corporate party" required under Rule 26.1(a) of the Federal Rules of Appellate Procedure to submit a corporate disclosure statement.

*s/*Jordan Laris Cohen
JORDAN LARIS COHEN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(646) 264-3614
cohen.jordan.l@dol.gov

*Attorney of record for*
  *Respondent Secretary of Labor*

i

**Statement Regarding Oral Argument (5th Cir. R. 28.2.3)**

The Secretary of Labor does not request oral argument because this petition for review involves a straightforward application of this Court's precedents regarding the unpreventable employee misconduct defense and can therefore be decided on the papers.

# **Table of Contents**

**Statement of Jurisdiction** ....................................................................1

**Statement of Issues**................................................................................2

**Statement of the Case** .........................................................................3

   **I.**    **Statutory and Regulatory Background**.....................................3

   **II.**   **Procedural History**........................................................................6

   **III.**  **Statement of the Facts**...................................................................7

      **A.**   **J.D. Abrams' Work in the Unprotected Trench** ....................7

      **B.**   **OSHA's Inspection and Issuance of the Citation.**...............10

      **C.**   **The ALJ Decision Affirming the Citation.**..........................11

   **IV.**  **Summary of the Argument**..........................................................14

**ARGUMENT** ......................................................................................17

   **I.**    **Standard of Review** ...................................................................17

   **II.**   **Substantial Evidence Supports the ALJ's Conclusion that J.D. Abrams Failed to Establish the Third and Fourth Elements of Its Affirmative Defense of Unpreventable Employee Misconduct.**...........................18

      A.   The ALJ Properly Concluded that J.D. Abrams Failed to Prove It Took Adequate Steps to Discover Violations of Its Work Rules Because the Company's Evidence of Safety Monitoring Lacked Any Supporting Documentation, Contained Substantial Gaps, and Was Undermined by Other Evidence in the Record. ...................................................................19

      B.   Substantial Evidence Supports the ALJ's Conclusion that J.D. Abrams Failed to Prove It Adequately Enforced the Applicable Work Rules Because a Supervisor Directed and Observed the Violative Conduct, and the Company Introduced No Specific Evidence of Pre-Inspection Enforcement..................28

   **III.**  **Substantial Evidence Supports the ALJ's Conclusion that the Violations Were "Serious" as Defined Under the OSH Act Because a Trench Cave-In or Fall from a Ladder Would Have the Probable Consequence of Broken Bones or Other Serious Physical Harm.**............................................37

**IV.  The ALJ Did Not Abuse His Discretion in Assessing the Penalty Because the Company is a Large Employer, the Violations Here Exposed an Employee to Cave-In and Fall Hazards for Approximately Six Hours, and the Violations Were Directed By a Supervisory Employee.** ............................40

**Conclusion**.................................................................................44

# **Table of Authorities**

## **Cases**

*4 State Trucks*, 22 BNA OSHC 1929 (No. 08–1125, 2009).....................................29

*American Sterilizer Co.*, 18 BNA OSHC 1082 (No. 91-2494, 1997) .....................21

*Angel Bros. Enters., Ltd. v. Walsh*, 18 F.4th 827 (5th Cir. 2021).................... passim

*Aquatek*, 21 BNA OSHC 1400 (No. 03-1351, 2006) ..............................................36

*Armstrong Utilities, Inc.*, 2021 OSH CCH P 33855, 2021 WL
    4592200 (No. 18-0034, 2021) .......................................... 20, 23, 24, 30

*Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377 (D.C. Cir. 1985).....................39

*Bunge Corp v. Sec'y of Labor*, 638 F.2d 831 (5th Cir. 1981) ................................19

*Burkes Mechanical, Inc.*, 21 BNA OSHC 2136, 2007 WL 2046814 (No.
    04-475, 2007)................................................................................................42

*Capeway Roofing Systems, Inc.*, 20 BNA OSHC 1331 (No. 00-1968, 2003).........25

*Capform, Inc. v. Chao*, No. 01-60417, 2002 WL 35650276 (5th Cir. Mar. 20,
    2002) (per curiam) ................................................................................41

*Capform, Inc.*, 19 BNA OSHC 1374 (No. 99-0322, 2011), *aff'd* 34 F. App'x
    152 (5th Cir. 2002) ................................................................................43

*Chao v. OSHRC*, 401 F.3d 355 (5th Cir. 2005) ....................................................17

*Cooper/T. Smith Corp. d/b/a Blakeley Boatworks, Inc.*, 29 OSHD (CCH) P
    33784, 2020 WL 1692541 (No. 16-1533, 2020).......................................... 33, 34

*Daisy Cons. Co. v. Sec'y of Labor*, 527 F. App'x 1 (D.C. Cir. 2013)....................29

*DiGioia Bros. Excavating, Inc.*, 17 BNA OSHC 1181 (No. 92-3024, 1995) .........38

*Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202 (5th Cir. 1991)................................1

*Donovan v. Daniel Constr. Co.*, 692 F.2d 818 (5th Cir. 1982) ..............................38

*Excel Modular Scaffold & Leasing Co. v. OSHRC*, 943 F.3d 748
    (5th Cir. 2019)................................................................................ 37, 40

*Florida Gas Contractors, Inc.*, 2019 OSHD (CCH) P 33709, 2019 WL 995716
    (No. 14-0948, 2019) ..........................................................................33

*Floyd S. Pike Elec. Contractor, Inc. v. OSHRC*, 576 F.2d 72 (5th Cir. 1978)........28

*Gen. Motors Corp.*, 22 BNA OSHC 1019, 2007 WL 4350896 (Nos. 91-2834E
    & 91-2950, 2007) .............................................................................42

*H.B. Zachry Co. v. OSHRC*, 638 F.2d 812 (5th Cir. 1981) ....................................29

*Hayes v. Dearborn Nat'l Life Ins. Co.*, 744 F. App'x 218 (5th Cir. 2018) .............17

*Hern Iron Works*, 16 BNA OSHC 1619 (No. 88-1962, 1994)...............................42

*Home Rubber Company, LP*, 2021 OSHD (CCH) P 33853, 2021 WL 3929735
    (17-0138, 2021)......................................................................... 37, 40

*Ivy v. Mississippi*, No. 3:13-cv-233, 2016 WL 5375764 (N.D. Miss.
    Sept. 23, 2016) ................................................................................31

*J.A. Jones Construction Co.*, 15 BNA OSHC 2201, 1993 WL 61950
    (No. 87-2059, 1993)...........................................................................7

*Malveaux v. Mathews*, 542 F.2d 647 (5th Cir. 1976) .............................................17

*Martin v. OSHRC (CF&I Steel Corp.)*, 499 U.S. 144, 151 (1991) ..........................3

*Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557 (5th Cir. 1997) ....11

*Nat'l Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257 (D.C. Cir. 1973)................29

*Oil Sales & Processing Corp.*, 5 BNA OSHC 1512, 1976 WL 21659
    (No. 12139, 1976) (ALJ) ...................................................................42

*P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100 (1st Cir. 1997) ............. 22, 23, 30

*P. Gioioso & Sons, Inc. v. OSHRC*, 675 F.3d 66 (1st Cir. 2012) ...........................22

*Phoenix Roofing, Inc. v. Dole*, 874 F.2d 1027 (5th Cir. 1989)...............................17

*Precast Services, Inc.*, 17 BNA OSHC 1454 (No. 93-2971, 1995)................. 34, 36

Rawson Contractors, Inc., 20 BNA OSHC 1078 (No. 99-0018,
    2003) ............................................................................ 20, 23, 24, 30

*Reflections Tower Serv., Inc.*, 19 BNA OSHC 1551, 2001 WL 777056 (No. 00-1201, 2001) (ALJ) ........................................................ 39

*Shaw Constr., Inc. v. OSHRC*, 534 F.2d 1183 (5th Cir. 1976) ............................... 41

*Siravo Contracting, Inv.*, 17 BNA OSHC 1013, 1994 WL 659127 (No. 93-0445, 1994) (ALJ) ....................................................... 39

*Southern Hens, Inc. v. OSHRC*, 930 F.3d 667 (5th Cir. 2019) .................. 17, 18, 37

*Stahl Roofing*, 19 BNA OSHC 2179 (Nos. 00-1637 & 01-1268, 2003) ................ 36

*Stark Excavating, Inc.*, 24 BNA OSHC 2215, 2014 WL 5825310 (Nos. 09-0004 & 09-0005, 2014) .................................................. 20, 22, 30

*Sw. Bell Tel. Co. v. Chao*, 277 F.3d 1374, 2001 WL 1485847 (5th Cir. 2001) (per curiam) ..................................................... passim

*TNT Crane & Rigging, Inc.*, 2022 OSHD (CCH) P 33886 (No. 16-1587, 2022) . 29, 34, 35, 36

*Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423 (5th Cir. 2001) ............... 17

*Turner Commc'ns Corp. v. OSHRC*, 612 F.2d 941 (5th Cir. 1980) ...................... 38

*UNF West, Inc. v. NLRB*, 844 F.3d 451 (5th Cir. 2016) ........................................ 31

*United States v. Meyer*, 63 F.4th 1024 (5th Cir. 2023) ........................................ 31

*United States. v. Wilson*, 322 F.3d 353 (5th Cir. 2003) ........................................ 25

## **Statutes**

29 U.S.C. § 651(b) ................................................................... 3

29 U.S.C. § 651(b)(3) ............................................................... 3

29 U.S.C. § 654 ....................................................................... 4

29 U.S.C. § 654 ....................................................................... 18

29 U.S.C. § 655 ....................................................................... 4

29 U.S.C. § 658 ....................................................................... 4

29 U.S.C. § 659 ....................................................................... 4

29 U.S.C. § 659(c) .................................................................................1, 4

29 U.S.C. § 660.......................................................................................19

29 U.S.C. § 660.........................................................................................5

29 U.S.C. § 660(a) ....................................................................................1

29 U.S.C. § 661(a) ....................................................................................4

29 U.S.C. § 661(j) .....................................................................................4

29 U.S.C. § 661(j) .....................................................................................1

29 U.S.C. § 666.........................................................................................4

29 U.S.C. § 666(j) ................................................................................4, 41

5 U.S.C. § 556.........................................................................................19

## Other Authorities

85 Fed. Reg. 2292, 2298–99 (Jan. 15, 2020) ...........................................4

Secretary's Order 08-2020, 85 Fed. Reg. 58393 (2020)............................1

## Rules

Fed. R. App. P. 10(a) ..............................................................................33

Fed. R. App. P. 28(a) ..............................................................................11

Fed. R. Evid. 103 ............................................................................... 31, 32

Fed. R. Evid. 901 ............................................................................... 31, 32

## Treatises

2 McCormick on Evidence § 264 (Kenneth S. Broun, ed., 2006)...........................25

## Regulations

29 C.F.R. § 1926.1053 ...............................................................................5

29 C.F.R. § 1926.650(a)..............................................................................5

29 C.F.R. § 1926.652 ..................................................................................5

29 C.F.R. § 2200.12 ...................................................................7

29 C.F.R. § 2200.70 .................................................................31

29 C.F.R. § 2200.71 .................................................................32

29 C.F.R. § 2200.90(f) ...............................................................1

29 C.F.R. § 2200.91(a) ...............................................................5

## Statement of Jurisdiction

This matter arises from an Occupational Safety and Health Administration

(OSHA)[1] enforcement proceeding before the Occupational Safety and Health

Review Commission (Commission). The Commission had jurisdiction pursuant to

section 10(c) of the OSH Act, 29 U.S.C. § 659(c). A Commission administrative

law judge (ALJ) issued a decision and order on August 18, 2022. The Commission

did not direct the ALJ's decision for discretionary review, and it became a final

order of the Commission by operation of law on October 3, 2022. 29 U.S.C.

§ 661(j); 29 C.F.R. § 2200.90(f). J.D. Abrams, L.P. ("Abrams") filed a timely

petition for review with this Court on November 14, 2022.[2] This Court has

jurisdiction over the petition for review under 29 U.S.C. § 660(a).

---

[1] The Secretary's responsibilities under the Occupational Safety and Health Act
(OSH Act) have been delegated to an Assistant Secretary who directs OSHA.
Secretary's Order 08-2020, 85 Fed. Reg. 58393 (2020). The terms "Secretary" and
"OSHA" are used interchangeably in this brief.

[2] The caption lists the Commission as a respondent in this case, but the
Commission is not an active party because, "[l]ike a district court, the Commission
has no duty or interest in defending its decision on appeal and it has no stake in the
outcome of the litigation." *Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202, 1209 (5th
Cir. 1991) (citation omitted).

1

**<u>Statement of Issues</u>**

1.    Whether substantial evidence supports the ALJ's conclusion that Abrams failed to prove it took adequate steps to discover violations of its work rules to establish the third element of the affirmative defense of unpreventable employee misconduct, where the company produced no documentation of any internal safety monitoring; the only evidence regarding any purported monitoring was testimony that contained substantial gaps and that was undermined by evidence showing Abrams did not investigate a near-miss accident the day prior to the inspection; and the company had not "ever" inspected the work of the onsite supervisor in his nearly two years of employment prior to the OSHA inspection.

2.    Whether substantial evidence supports the ALJ's conclusion that Abrams failed to prove it adequately enforced the relevant work rules to establish the fourth element of the affirmative defense of unpreventable employee misconduct, where a four-person crew (including a supervisor) all engaged in or observed the violative conduct for approximately six hours, and the record contained no documentary evidence that the company had ever enforced its work rules prior to the OSHA inspection.

3.    Whether substantial evidence supports the ALJ's classification of Abrams' violations of OSHA's excavation and ladder standards as serious, where uncontroverted evidence showed that a trench wall cave-in or a fall from a

construction ladder, were such an accident to occur, would have the probable consequence of causing serious physical harm to an exposed employee.

4.      Whether the ALJ was within his discretion to assess a total penalty of $13,494 for two serious OSHA violations, for a company with approximately 500 employees, where for approximately six hours an onsite supervisor directed and observed an employee working in an unprotected trench and exposed to a ladder fall hazard, and where the employer failed to show it effectively monitored and enforced its safety rules.

## Statement of the Case

**I.    Statutory and Regulatory Background**

The OSH Act's purpose is "to assure so far as possible" safe working conditions for "every working man and woman in the Nation." 29 U.S.C. § 651(b). To advance that purpose, Congress created an "unusual regulatory structure" that divides regulatory, enforcement, and adjudicative functions between two different administrative actors. *Martin v. OSHRC (CF&I Steel Corp.)*, 499 U.S. 144, 151 (1991). Congress gave the Secretary, acting through OSHA, regulatory, policymaking, and enforcement responsibilities, and conferred on the Commission, an independent body that is not part of the U.S. Department of Labor, purely adjudicative responsibilities. *Id.* at 147, 152-54.

OSHA's regulatory responsibilities include promulgating and enforcing "mandatory occupational safety and health standards," *see* 29 U.S.C. §§ 651(b)(3),

654, 655, 658, 659, and OSHA enforces its standards by conducting inspections of workplaces and issuing citations for discovered violations. *Id.* §§ 657-659. OSHA citations require the employer to abate the violation and, where appropriate, assess a civil penalty. *Id.* §§ 658-659, 666. The purpose of these civil penalties is to provide employers with a financial incentive to prevent and abate violations of OSHA standards. 29 U.S.C. § 666. Violations of OSHA standards are characterized as "serious," "other-than-serious," "willful," or "repeated," 29 U.S.C. § 666(a)-(c), and, at the time OSHA issued the citations relevant to this case, the OSH Act authorized civil penalties of up to $13,494 for serious and non-serious violations, and a heightened penalty of up to $134,937 for willful and repeated violations. 85 Fed. Reg. 2292, 2298–99 (Jan. 15, 2020). OSHA proposes specific penalty amounts when it issues citations, but when an employer contests a citation, the Commission is responsible for setting the ultimate penalty amount after "giving due consideration to . . . the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations." 29 U.S.C. § 666(j).

When a cited employer contests a citation, an administrative law judge (ALJ) appointed by the Commission adjudicates the dispute, after which a party that is dissatisfied with the ALJ's decision may petition the three-member Commission for discretionary review. 29 U.S.C. §§ 659(c), 661(a), (j); 29 C.F.R. §

4

2200.91(a). If review is not granted, the ALJ's decision becomes the final order of the Commission thirty days after its issuance. 29 U.S.C. § 661(j). Final orders of the Commission are reviewable in the courts of appeals. *Id.* § 660(a)-(b).

OSHA has promulgated safety and health standards that apply to employers engaged in construction activities, *see* 29 C.F.R. Part 1926, including standards that apply to "all open excavations made in the earth's surface," including "trenches." *Id.* § 1926.650(a). Section 1926.652(a)(1) of those standards provides:

> Each employee in an excavation shall be protected from cave-ins by an adequate protective system designed in accordance with [§ 1926.652(b) or (c)] except when:
>
> > (i) Excavations are made entirely in stable rock; or
> >
> > (ii) Excavations are less than 5 feet (1.52m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

Sections 1926.652(b) and (c) describe various types of cave-in protection systems including "sloping," "benching," "support," and "shield" systems.

OSHA has also promulgated construction standards that apply to use of ladders. 29 C.F.R. § 1926.1053. Section 1926.1053(b)(1) of those standards provides, in relevant part: "When portable ladders are used for access to an upper landing surface, the ladder side rails shall extend at least 3 feet (.9 m) above the upper landing surface to which the ladder is used to gain access."

5

## II.    Procedural History

On December 3, 2019, a four-person crew of employees from Abrams performed excavation work on the side of a highway near Austin, Texas, during which an Abrams employee entered a trench greater than five feet in depth without any form of cave-in protection on and off for approximately six hours. Tr. 23:23-26:9.[3] The Area Director for the OSHA Austin Area Office drove by and observed the Abrams worksite, and sent two OSHA Compliance Safety and Health Officers (CSHOs) to conduct an inspection. Tr. 78:12–23. After the inspection, OSHA issued a two-item citation to Abrams alleging a serious violation of 29 C.F.R. § 1926.652(a)(1) for failure to use cave-in protection, and a serious violation of 29 C.F.R. § 1926.1053(b)(1) for using a ladder for trench ingress and egress that extended fewer than three feet above the trench edge. Ex. C-1.

Abrams timely contested the citation, and ALJ Christopher D. Helms held a one-day hearing on December 9, 2021. On August 18, 2022, the ALJ issued a decision affirming the citation and assessing a penalty of $13,474 for the two

---

[3] This brief will use the following abbreviations for documents listed in the Certified List of record excerpts (Certified List): Tr. (hearing transcript, listed in Volume 1 of the Certified List); Ex. C- (Secretary's Exhibits, listed in Volume 2 of the Certified List); Ex. R- (Abrams' Exhibits, listed in Volume 2 of the Certified List); Dec. (ALJ Decision, listed as Item 51, Volume 3 of the Certified List); Pet. Post-Hrg. Br. (Abrams' Post-Hearing Brief, listed as Item 49, Volume 3 of the Certified List).

violations. *See generally* Dec. Abrams filed a petition for discretionary review with the Commission. The Commission declined to direct the case for review, after which the ALJ's decision became the final order of the Commission by operation of law on October 3, 2022. *See* Vol. 3, Item 54 (Notice of Final Order).[4] On November 14, 2022, Abrams timely filed the instant petition for review.

## III.    Statement of the Facts

### A. J.D. Abrams' Work in the Unprotected Trench

Abrams is a construction company operating throughout the State of Texas. Tr. 124:1–8. It has around 500 employees, and has been in operation for multiple decades. Tr. 123:6–9, 119:16–7.

In late November 2019, an Abrams trench excavation crew led by Ramon Louis Reyes Rivera ("Rivera")[5] began a pipe installation project alongside a highway near Austin. Tr. 41:14–21 67:16–17. On December 3, 2019, at around 7:00 or 8:00 a.m., four Abrams employees began work on the trench where the

---

[4] Although the ALJ's decision here became a final order of the Commission for purposes of judicial review, ALJ decisions that are not reviewed by the Commission have no precedential value in future Commission proceedings. *See*, *e.g.*, *J.A. Jones Construction Co.*, 15 BNA OSHC 2201, 1993 WL 61950, at *5 n.10 (No. 87-2059, 1993); 29 C.F.R. § 2200.12.

[5] Rivera testified he does not have a preference between being referred to by Reyes or Rivera. Tr. 23:17–19. This brief uses the name Rivera, consistent with the Secretary's post-trial brief and the ALJ's decision, *see* Dec. at 3 n.4; Abrams' principal brief uses the name Reyes.

OSHA inspection occurred: the supervisor, Rivera, directed the work; Orlando

Garcia worked inside the trench; Pedro Ortega worked "on the side of the trench";

and Mr. Cruz operated the backhoe. Tr. 24:14-25:21. After Cruz dug open the

trench, Rivera measured its depth at five feet six inches. 24:14–16, 25:19–25.

On December 2, 2019 (the day before the inspection), Rivera's crew worked

on a different trench and used a "trench box"—a large metal structure with

reinforced walls along both sides of the trench—to protect any employees in the

trench against a cave-in of the trench walls. Tr. 41:24-42:19. At some point during

the day when the trench box was moved, it crushed a water pipe in the trench, and

the pipe exploded. Tr. 42:15–19. No one was working in the trench at the time of

the pipe explosion, but Rivera understood that the accident would have been

disastrous and potentially fatal if a person had been in there. *See* Tr. 43:19–25

(stating that if a worker had been present the accident would have resulted in

"something that I hope nobody . . . would ever have to see," such as a worker

"missing an arm or missing a rib"); *id.* 69:7–17 ("Thank God that they weren't in

the excavation [when the water line exploded].").

Following the accident, Rivera called a subcontractor who repaired the pipe,

and his crew continued working on that trench. Tr. 42:11–14. Rivera's two

supervisors—Abrams Superintendent Marcio Matute, and Project Superintendent

Steve Clementino ("the superintendents")—were also made aware of the water

8

pipe explosion on December 2. Tr. 71:2–5, 72:1–3. Despite being notified, however, neither superintendent visited the project site on December 2 in response to the potentially fatal near-miss, nor on the following morning when Rivera and his crew began work on the trench at issue in this case, which also contained a water line and was located at the same worksite. *See* Dec. 4, 23; Tr. 72:4–10 (superintendents arrived onsite only after OSHA inspection on December 3). Instead, Rivera decided on his own how to proceed with the trench work on December 3 in light of the accident on December 2, and chose to forego the use a trench box or any other form of cave-in protection, even though he knew a subordinate employee was required to enter the trench to perform his work.[6] *See* Tr. 33:6–8 ("This was a bad decision on my part because I wanted to avoid an accident with the water pipe."); *see also* Tr. 43:1–2 ("I made the decision to not . . . use a security box[.]"); 43:10 ("I made the decision[.]"); 47:23 ("I made a personal decision[.]").

Thus, on December 3, Rivera directed Garcia to enter and work in the unprotected trench at issue here. Tr. 24:21-25:11; 26:5–9. Garcia climbed down into the trench using a ladder, prepared for a section of pipe to be placed, and

---

[6] The day after the OSHA inspection, Rivera's crew continued the project using a trench box, without causing any damage to the water line. Tr. 30:23-31:5.

climbed up the ladder to allow the pipe to be placed with him outside of the trench. Tr. 26:15–20. The crew continued that process along the length of the trench with the ladder being moved and Garcia using it to enter and exit. Tr. 26:24-27:1, 56:13–24.

Garcia worked in the unprotected trench for a period of around five to six-and-a-half hours—from around 7:00 or 8:00 a.m., when the trench was opened, until the start of the OSHA inspection at around 1:00 or 1:30 p.m. Tr. 27:5–13. Rivera supervised the work the entire time. 27:11–13.

B. OSHA's Inspection and Issuance of the Citation.

When CSHOs Robert Ray and Darren Beck arrived to inspect the worksite, Rivera called the Abrams Safety Coordinator for the Central Texas Area, who in turn called Superintendents Matute and Clementino. Tr. 72:12–15, 124:15–20. Matute and Clementino later arrived at the job site during the inspection. Tr. 72:9–10, 72:16–18.

During the OSHA inspection, the CSHOs took witness statements, photographed the worksite, and took measurements. Tr. 80–84. They measured the trench depth in three areas, and each measurement was over five feet: five feet eight inches, six feet, and six feet seven inches. Tr. 91; Ex. C-6 at 2; Ex. C-8 at 3. They also measured the ladder Garcia used to enter and exit the trench, and found that it extended only two feet eight inches above the landing surface. Tr. 29, 92–3;

Ex. C-5, C-8, C-11 at 2. At trial, Rivera did not dispute the accuracy of any of

OSHA's measurements.[7] Tr. 28:21–23, 29:17–19. Abrams later disciplined Rivera

and Garcia for their conduct. Tr. 53:24-54:3, 54:24-55:3.

Following the inspection, OSHA issued Abrams a two-item citation alleging

a serious violation of 29 C.F.R. § 1926.652(a)(1) for failure to use cave-in

protection, and a serious violation of 29 C.F.R. § 1926.1053(b)(1) for using a

ladder for trench ingress and egress that extended fewer than three feet above the

trench edge.

C.  The ALJ Decision Affirming the Citation.

After a one-day hearing involving the testimony of CSHO Ray, Rivera, and

Abrams Vice President Steven Zbranek, the ALJ affirmed both citation items and

assessed a total penalty of $13,474—$7,711 for failure to use cave-in protection

and $5,783 for improper use of a ladder. Dec. at 27–28.

---

[7] Abrams has not challenged the ALJ's determination that the violations occurred
and has therefore waived any such challenge. To the extent Abrams' opening brief
to this Court tangentially asserts in its statement of facts that the ladder extended
three feet or more above the trench, *see* Pet. Br. 5–6, that issue was not raised in its
statement of issues or analyzed in its argument section and is therefore waived.
*Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 561 (5th Cir. 1997)
(arguments not contained in statement of issues or analyzed in argument portion
are waived); Fed. R. App. P. 28(a).

With regard to the merits of the cave-in protection violation, the ALJ found that the standard applied because the trench measured greater than five feet. *Id.* at 11–12. He rejected Abrams' argument that parts of the trench wall comprised of asphalt or concrete should be subtracted from the trench's depth, finding clear Commission precedent to the contrary. *Id.* at 12. The ALJ also determined that the standard was violated because there was no form of trench protection, and that Garcia was exposed to a cave-in hazard as a result of the violation because he was working in the trench. *Id.* at 12–13. The ALJ further concluded that Abrams had actual knowledge of the violation through Rivera's knowledge of Garcia's violative conduct, rejecting Abrams' argument that such knowledge could not be imputed because Rivera was a supervisory employee. *Id.* at 14 (citing *Angel Bros. Enters., Ltd. v. Walsh*, 18 F.4th 827, 830–31 (5th Cir. 2021)).

With regard to the merits of the ladder violation, the ALJ found that the standard applied because Garcia used a portable ladder to enter and exit the trench. Dec. at 16. He then found that the standard was violated because, contrary to Abrams' claims, the evidence showed the ladder extended fewer than three feet above the landing surface (and, furthermore, Abrams expressly conceded the issue in response to the Secretary's Requests for Admission). *Id.* at 16. The ALJ also found that Garcia was exposed to a fall hazard as a result of the ladder violation, finding "[t]he record . . . clear that Mr. Garcia used the ladder throughout the day

12

to get into and out of the trench." *Id.* at 17. Finally, the ALJ concluded that J.D. Abrams had knowledge of the violation through Rivera because the ladder violation was plainly observable and because Rivera could have discovered, through the exercise of reasonable diligence, that the ladder was not properly positioned. *Id.* at 18.

After determining that the two violations occurred, the ALJ further concluded that J.D. Abrams failed to establish an affirmative defense of unpreventable employee misconduct. Dec. at 18–25. He found that although the company showed it established and communicated work rules prohibiting the violative conduct, it failed to prove that it took adequate steps to discover violations of those rules and to enforce them.  Regarding the monitoring prong of the affirmative defense, the ALJ concluded that the company failed to prove that it adequately monitored for safety violations because, although its policies required documentation of periodic audits and other monitoring efforts, Abrams did not introduce any documentation of those purported efforts. *Id.* at 22. Moreover, the ALJ found that Zbranek's testimony regarding Abrams' monitoring programs—the only evidence the company provided in support of this element of its employee misconduct defense—contained significant gaps and was further undermined by the company's failure to investigate the water pipe accident on December 2. *Id.* at 23. Regarding effective enforcement of the applicable safety rules, the ALJ further

concluded that J.D. Abrams did not establish this element of its affirmative defense

because the company failed to prove that it had ever disciplined an employee for

violating its trenching or ladder safety rules before the violations occurred. *Id.* at

23–25.

Finally, the ALJ concluded that both violations were serious because the

record showed an accident resulting from the cave-in hazard could result in

contusions, fractures, suffocation, or death, and an accident resulting from the fall

hazard could result in contusions, fractures, and concussions. *Id.* at 26. The ALJ

assessed a penalty of $13,474 for the two violations because J.D. Abrams is a large

employer not entitled to a size reduction, the gravity of the violations was

moderate and low, there was no penalty increase for past OSHA history, and a

reduction for good faith was inappropriate because, as the ALJ found, Abrams'

safety program was inadequate. *Id.* at 27.

## IV.    Summary of the Argument

Substantial evidence supports the ALJ's determination that Abrams did not

prove the final two elements of its affirmative defense of unpreventable employee

misconduct: (1) that it took adequate steps to discover violations of the applicable

work rules, and (2) that it adequately enforced those rules when violations were

discovered.[8] For each of these reasons, the ALJ properly concluded that the

company's employee misconduct defense failed.

Under the precedents of this Court and the Commission, the ALJ properly

found that Abrams' failure to introduce any documentation whatsoever of its

monitoring efforts substantially undermined its ability to show it took adequate

steps to discover violations of its work rules. Moreover, the only evidence the

company cites regarding its safety monitoring program is testimony that contained

significant gaps and was undermined by Abrams' failure to send anyone to the

worksite in response to the water pipe explosion on December 2. In addition, the

company's failure to "ever" inspect Rivera's work in his nearly two years with the

company prior to the OSHA inspection is further compelling evidence supporting

the ALJ's conclusion that Abrams did not adequately monitor for safety violations.

Substantial evidence also supports the ALJ's conclusion that Abrams failed

to prove effective enforcement. As a preliminary matter, the participation of a

supervisor and three subordinate employees in the violation over a period of

---

[8] Abrams does not challenge in this appeal the Commission's determination that
the Secretary established a *prima facie* violation of both standards. Rather, the
only issues before this Court are whether the substantial evidence supports the
ALJ's conclusion that the company failed to establish its affirmative defense,
whether substantial evidence supports the ALJ's classification of the violations as
serious, and whether the ALJ's penalty assessment was an abuse of discretion.

approximately six hours is strong evidence that the company's enforcement of its safety rules is lax. Moreover, the record does not contain any documentation showing that Abrams enforced the relevant safety rules prior to the inspection in this case. And, the ALJ properly found that post-inspection discipline alone was insufficient to prove effective enforcement in this case.

In addition, substantial and uncontroverted evidence supports the ALJ's classification of the excavation and ladder violations as "serious." There is no dispute that a cave-in of the trench here could result in serious injuries including death, and substantial evidence supports the ALJ's determination that a fall from the ladder could result in serious injuries including fractures and concussions. The likelihood of a trench cave-in or fall from a ladder occurring is irrelevant to the seriousness of the violations. Finally, in determining a penalty, the ALJ properly addressed each of the factors enumerated in 29 U.S.C. § 666(j) and was therefore well within his discretion to assess a penalty of $13,474 for these two serious OSHA violations.

For these reasons, the Court should deny the petition for review and affirm the Commission's final order.

# **ARGUMENT**

## I.   **Standard of Review**

The Court "must accept findings of fact by the Commission as conclusive if they are supported by substantial evidence on the record considered as a whole."[9] *Southern Hens, Inc. v. OSHRC*, 930 F.3d 667, 674 (5th Cir. 2019) (internal quotation marks and citation omitted); *see also Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 426–27 (5th Cir. 2001) (Court is bound by findings of fact supported by substantial evidence even if it "could justifiably reach a different result de novo"); *Phoenix Roofing, Inc. v. Dole*, 874 F.2d 1027, 1029 (5th Cir. 1989) (Court reviewing for substantial evidence does "not reweigh the evidence or independently evaluate evidentiary conflicts"). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chao v. OSHRC*, 401 F.3d 355, 362 (5th Cir. 2005). The Court upholds the Commission's legal conclusions unless they are "arbitrary, capricious,

---

[9] Abrams misapplies the standard of review throughout its brief, incorrectly asserting that it should prevail if substantial evidence supports its position. *See, e.g.*, Pet. Br. at 18, 20, 29, 35, 36. Rather, the Court must affirm unless the *ALJ's decision is not* supported by substantial evidence. In other words, even if substantial evidence in the record could support both the ALJ's findings and other potential findings, the Court must affirm the Commission's final order adopting the ALJ's decision. *See Hayes v. Dearborn Nat'l Life Ins. Co.*, 744 F. App'x 218, 223 (5th Cir. 2018); *Malveaux v. Mathews*, 542 F.2d 647, 648 (5th Cir. 1976).

an abuse of discretion, or otherwise not in accordance with law." *Southern Hens*,

930 F.3d at 675.

## II.     Substantial Evidence Supports the ALJ's Conclusion that J.D. Abrams Failed to Establish the Third and Fourth Elements of Its Affirmative Defense of Unpreventable Employee Misconduct.

To establish an affirmative defense of unpreventable employee misconduct,

the employer has the burden to prove that it: "1) has established work rules

designed to prevent the violation, 2) has adequately communicated these rules to

its employees, 3) has taken steps to discover violations, and 4) has effectively

enforced the rules when violations have been discovered." *Angel Bros. Enters.,*

*Ltd. v. Walsh*, 18 F.4th 827, 832 (5th Cir. 2021).  The employer must establish all

four elements to prove this affirmative defense. *Id.* As explained in detail below,

Abrams failed to meet its burden of proof on the third and fourth elements.[10]

---

[10] Abrams devotes a lengthy section in its brief to the argument that the ALJ's decision "eviscerates the purpose of Section 5(b) of the Act" without citing any legal authority to support that apparently novel theory. Pet. Br. at 13-18 (citing 29 U.S.C. § 654). Its assertion that the "ALJ's Decision regarding the final two elements of the [employee misconduct] defense is erroneous" because it is inconsistent with Section 5(b), which provides that "[e]ach employee shall comply" with applicable OSHA standards and regulations, *id.* at 13–16, is not supported by the sources it cites. Although Abrams invokes various authorities to support unremarkable points about the purpose of the OSH Act, it cites no authority for its claim that Section 5(b) of the OSH Act serves as an independent basis for overturning the ALJ's decision.  Indeed, the substance of its argument clearly sounds in the doctrine of unpreventable employee misconduct, for which this Court has adopted a comprehensive test. *See Angel Bros. Enters., Ltd. v. Walsh*, 18 F.4th 827, 832 (5th Cir. 2021); *see, e.g.*, Pet. Br. at 17 (asserting the

A. <u>The ALJ Properly Concluded that J.D. Abrams Failed to Prove It Took Adequate Steps to Discover Violations of Its Work Rules Because the Company's Evidence of Safety Monitoring Lacked Any Supporting Documentation, Contained Substantial Gaps, and Was Undermined by Other Evidence in the Record.</u>

Substantial evidence supports the ALJ's conclusion that Abrams did not

prove it took effective steps to discover violations of its cave-in protection and

ladder safety rules. Even though Abrams' policies provide that safety audits will be

conducted regularly and documented in writing, *see* R-1 at 6 ("Results of the

inspection must be documented and forwarded to the Project Manager or Site

Manager for corrective actions."); Tr. 153:5–10, Abrams did not introduce any

documentation of its purported monitoring efforts, and the only testimony

regarding those efforts was generalized and contained significant gaps. *See*

---

ALJ's decision "renders the employee misconduct defense unattainable" and would have "nonsensical ramifications . . . on employee-misconduct jurisprudence"). Abrams' arguments regarding the ALJ's alleged errors in applying the unpreventable employee misconduct defense are therefore properly addressed under the framework of that defense. For the reasons explained below, the ALJ did not err in his application of the unpreventable employee misconduct defense, and substantial evidence supports the ALJ's conclusion that Abrams did not meet its burden of proof. Similarly, J.D. Abrams' assertion that the ALJ "violated section 556(d) of the APA" (requiring agency decisions be made "on consideration of the whole record . . . and supported by . . . substantial evidence"), and "are contradicted by the substantial evidence [per section 660 of the OSH Act]," Pet. Br. at 10, do not state separate claims for relief but merely recite the standards applicable in these proceedings. *See, e.g.*, *Bunge Corp v. Sec'y of Labor*, 638 F.2d 831, 834 n.5 & 838 (5th Cir. 1981) (applying 5 U.S.C. § 556 and 29 U.S.C. § 660 in petition for review of Commission decision).

19

*generally* Tr. 120:10-123:5. Under the precedent of this Court and the

Commission, the ALJ properly concluded that those deficiencies undermined

Abrams' proffered evidence of effective monitoring. *See Angel Bros. Enters., Ltd.*

*v. Walsh*, 18 F.4th 827, 832–3 (5th Cir. 2021); *Stark Excavating, Inc.*, 24 BNA

OSHC 2215, 2014 WL 5825310, at \*6 n.12 (Nos. 09-0004 & 09-0005, 2014);

*Armstrong Utilities, Inc.*, 2021 OSH CCH P 33855, 2021 WL 4592200 (No.

18-0034, 2021); *Rawson Contractors, Inc.*, 20 BNA OSHC 1078, 1081 (No. 99-

0018, 2003). In addition, the fact that the company had never once audited

Rivera's work during the nearly two years he had worked for the company is

further compelling evidence that the company did not adequately monitor for

safety violations. Tr. 33:19–21, 74:6–16. Each of these reasons provides

substantial evidence supporting the ALJ's conclusion that Abrams failed to meet

its burden to prove that it effectively monitored for violations of its cave-in

protection and ladder safety rules.

The ALJ properly concluded that Abrams' failure to provide any

documentation of its purported monitoring efforts undermined its ability to prove

that monitoring occurred. Abrams' own policies require that worksite audits must

be documented, *see* R-1 at 6; Tr. 153:5–10, and the company alleged that its safety

coordinators in fact documented worksite audits and prepared monthly safety

reports for managers, Petitioner's Opening Brief ("Pet. Br.") at 19. Yet the

company produced no documentation whatsoever to support these claims despite the Secretary's clear request, during discovery, for "[a] copy of all documents reflecting the means by which Respondent monitored compliance with the [applicable] work rules."[11] Ex. C-16 at 7; Dec. at 9, 22–23; *see also* Tr. 148:25-149:5 ("Q. You didn't produce a single document that this Court can look at to show how or if ever you monitor compliance with your work sites prior to this inspection other than the safety manual itself, correct? A. That's correct.") (Zbranek testimony); Ex. C-16 at 7–8 (Abrams' discovery responses reflecting no such documents produced); *accord* Tr. 143:17–21, 148:22. The ALJ appropriately relied on that lack of documentation in concluding Abrams failed to satisfy the third element of its employee misconduct defense.[12] *See Angel Bros. Enters.*, 18

---

[11] Mischaracterizing the ALJ's decision, Abrams asserts "no safety audit or safety investigation documentation was produced regarding this specific site, because the site was new." Pet. Br. at 19, 22. The ALJ did not find that Abrams failed to introduce documentation of monitoring for the site of the inspection, but rather that the company failed to introduce documentation of any monitoring whatsoever. Dec. at 9, 22–23. Furthermore, the Secretary's request for production of records regarding Abrams' monitoring efforts was clearly not limited to audits of this particular worksite. *See* Ex. C-16 at 7 (requesting "[a] copy of all documents reflecting the means by which Respondent monitored compliance with the work rules, procedures and/or policies produced in response to Request for Production No. 9").

[12] Abrams' argument that the ALJ improperly relied on *American Sterilizer Co.*, 18 BNA OSHC 1082 (No. 91-2494, 1997) for the proposition that it should have introduced documentation of its safety program implementation, Pet. Br. at 20–22,

F.4th at 832–3 (large construction company failed to show effective enforcement where it introduced documentation of only one disciplinary action taken in response to violations discovered during prior OSHA inspections); *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 110 (1st Cir. 1997) ("*Gioioso I*") (absence of documentation of auditing and discipline constitutes "lacuna in the proof [that] undermines [the employer's] attempt to mount a viable UEM defense"); *Stark Excavating, Inc.*, 24 BNA OSHC 2215, 2014 WL 5825310, at *6 n.12 ("[T]he Commission may 'count the absence of documentation against the proponent of [a UEM] defense.'") (alterations omitted) (quoting *P. Gioioso & Sons, Inc. v. OSHRC*, 675 F.3d 66, 73 (1st Cir. 2012)); *accord Armstrong Utilities, Inc.*, 2021

---

is misplaced on multiple levels. First, ample authority from this Court and from the Commission supports the ALJ's conclusion regarding the absence of documentation. *See supra accompanying text*. Second, Abrams mischaracterizes the ALJ's reliance on *American Sterilizer*, which the ALJ cited in a string cite for the unremarkable proposition that an employer asserting an employee misconduct defense must show both that it established the work rule and effectively implemented it. Dec. at 22 ("It is not enough that an employer has developed an exemplary safety program on paper, because the proper focus in employee misconduct cases is on the effectiveness of the employer's implementation of its safety program.") (internal quotation marks and citation omitted). Third, Abrams plainly misreads *American Sterilizer*'s contrasting of "[developing a] safety program on paper" with "implementation" to refer to the type of proof offered, rather than to the separate elements of establishing work rules and implementing them. That is, contrary to Abrams' characterization, documentary evidence of audits and disciplinary actions is proof of the implementation of work rules rather than the establishment of work rules, notwithstanding that they consist of "paper."

OSH CCH P 33855, 2021 WL 4592200; *Rawson Contractors, Inc.*, 20 BNA OSHC 1078, 1081.

In addition to the absence of any documentation of safety audits that were required to be documented, the ALJ properly found Abrams' purported proof of monitoring (which consists solely of Zbranek's testimony) insufficient because it contained substantial gaps, lacking such basic details as "the frequency of site visits, the process for discovering violations at a worksite, how information was communicated to the employees during a safety audit, or the steps to remedy any compliance issues at a worksite."[13] Dec. at 22-23; *see generally* Tr. 120:10-123:5; *Gioioso I*, 115 F.3d at 110 ("fairly conspicuous gaps as to the content" of safety program undermined employer's argument that work rules were effectively implemented). Those significant gaps support the ALJ's conclusion that Abrams failed to carry its burden.

Yet, without addressing the specific deficiencies in Zbranek's testimony (the company's only evidence on this element) identified by the ALJ, Abrams contends that it met its burden on the third element because "Mr. Zbranek testified fully . . . including to the satisfaction of the ALJ himself"—apparently thus referring to the

---

[13] Contrary to Abrams' assertions, *see* Pet Br. at 19, the ALJ did not ignore Zbranek's testimony but instead found it "insufficient to show that Respondent had a meaningful program to detect and to discourage safety violations." Dec. at 23.

fact that the ALJ participated at times in questioning Zbranek. Pet. Br. at 27. But the burden is on *the employer*—not the ALJ—to elicit testimony supporting its affirmative defense. *See Angel Bros. Enters.*, 18 F.4th at 832. And the Commission has repeatedly found generalized testimony regarding a company's safety program implementation, particularly in the absence of any documentation, insufficient to meet the employer's burden. *See Armstrong Utilities, Inc.*, 2021 OSH CCH P 33855, 2021 WL 4592200 (finding testimony of company manager insufficient in absence of documentation); *Rawson Contractors, Inc.*, 20 BNA OSHC 1078, 1081 (same). As the First Circuit noted in *Gioioso I*, "[T]here is no reason why a factfinder must accept an employer's anecdotal evidence uncritically. . . [and] we agree with the ALJ that the absence of any vestige of documentary proof was not only a relevant datum but a telling one." 115 F.3d at 110. The ALJ therefore properly concluded that Zbranek's unsupported, generalized testimony was insufficient to meet its burden of proof on this element.

Furthermore, the ALJ did not "manufacture[] a requirement that a lower-level safety coordinator needed to testify," as Abrams alleges. Pet. Br. at 27. Rather, the ALJ noted several gaps in Zbranek's testimony and observed that the company had access to information that could have filled those gaps, which it might have introduced through one of its safety coordinators, whom Abrams

identified as those who implement its safety program.[14]  *See* Dec. at 31; Pet. Br.

22–23.

In addition to the significant gaps in Zbranek's testimony, his assertion that

the company investigates injuries and near misses was undermined by the fact that

the company failed to investigate the near miss on December 2 when the trench

box crushed a water pipe, causing an explosion of water in the trench. Dec. at 23.

_____

[14] Abrams' assertion that the ALJ improperly relied on *Capeway Roofing Systems, Inc.*, 20 BNA OSHC 1331 (No. 00-1968, 2003) to draw an adverse inference from the lack of testimony from a safety coordinator, is without merit. Pet. Br. at 26–28. Abrams attempts to distinguish *Capeway* on the basis that *Capeway* involved a party's failure to call a rebuttal witness seated in the courtroom during trial, whereas the safety coordinator for the worksite here "no longer worked for the company at the time of trial and certainly was not sitting in the courtroom during trial." Pet Br. at 27. Abrams' argument should be rejected. First, the ALJ did not purport to draw an adverse inference or make findings as to the issues on which a safety coordinator might have testified—instead, he concluded that the testimony from Zbranek was insufficient, and observed in a single sentence that the company possessed that information and could have provided it through a different witness. Dec. at 22–23. Second, the ALJ did not opine that the company could have put on testimony from the particular safety coordinator in this case but rather "*an* Abrams' safety coordinator." Dec. at 23 (emphasis added). In any case, as this Court has recognized, the black letter legal principle in *Capeway* is not limited to the context of a rebuttal witness seated in the courtroom during trial (or even to testimonial evidence). *See, e.g.*, *United States. v. Wilson*, 322 F.3d 353, 363 (5th Cir. 2003) ("[T]his circuit has long recognized that a party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party."); *accord* 2 McCormick on Evidence § 264 (Kenneth S. Broun, ed., 2006).

Although Rivera's two supervisors were made aware of the potentially fatal near-miss, neither visited the worksite on December 2 or on December 3 until after the OSHA inspection. Tr. 71:2–5, 72:4–10. The ALJ therefore reasonably concluded that "[t]his lack of response suggests the safety coordinators did not consistently respond to near misses" as Zbranek had claimed. Dec. at 23.

Mischaracterizing the ALJ's decision, Abrams claims that the ALJ ignored evidence that Rivera "appropriately reported the issue." Pet. Br. at 22; *id.* at 23 (stating Rivera "did report the issue"). But the ALJ did not find that Rivera failed to report the issue, nor ignore evidence that he did. *See* Dec. at 4, 23. Rather, the ALJ found—as the company appears to concede, *see* Pet. Br. at 22 n.7—that no one from Abrams visited the worksite on December 2 or December 3 to investigate the water pipe explosion that could have been fatal if an employee had been in the trench at the time. *See* Dec. at 23. Nor did the ALJ require "continuous, full-time monitoring" to satisfy the third element of its employee misconduct defense, as Abrams claims. Pet. Br. at 23–24. Rather, the ALJ simply found that Abrams' failure to respond to the pipe explosion on December 2 undermined Zbranek's

testimony that the company consistently investigated and responded to accidents and near-misses.[15] Dec. at 23.

Furthermore, the fact that Abrams did not once audit Rivera's work in the nearly two years he had been with the company is additional evidence supporting the ALJ's conclusion on the monitoring element.[16] Rivera testified that as of the December 9, 2021 hearing he had worked for Abrams for nearly four years. Tr. 33:19–21. He further testified that prior to the OSHA inspection, during the nearly two years he had been with the company, his supervisors did not "ever" inspect his work. Tr. 74:9–16. The lack of any such inspection is strong evidence undermining Abrams' claim that it took adequate steps to discover violations of its work rules.

---

[15] Indeed, although unnecessary to support the ALJ's conclusion regarding Abrams' affirmative defense, that failure to respond likely contributed to the violation here.  Rivera, rather than determining with a safety coordinator or supervisor how to proceed with the project safely in light of the pipe explosion, decided on his own to forego cave-in protection altogether for fear that use of a trench box would cause a similar water pipe explosion in the trench where the violation occurred on December 3. *See* Tr. 33:6–8 ("This was a bad decision on my part because I wanted to avoid an accident with the water pipe."); *see also* Tr. 43:1–2 ("I made the decision to not . . . use a security box[.]"); 43:10 ("I made the decision[.]"); 47:23 ("I made a personal decision[.]").

[16] Although the ALJ did not expressly rely on this part of Rivera's testimony, it provides additional record support for the ALJ's conclusion that the company failed to establish sufficient monitoring for safety violations.

For all of these reasons, substantial evidence supports the ALJ's conclusion that Abrams failed to prove it took adequate steps to discovery violations of the relevant work rules, and thus failed to establish the third element of its unpreventable employee misconduct affirmative defense.

B. Substantial Evidence Supports the ALJ's Conclusion that J.D. Abrams Failed to Prove It Adequately Enforced the Applicable Work Rules Because a Supervisor Directed and Observed the Violative Conduct, and the Company Introduced No Specific Evidence of Pre-Inspection Enforcement.

The ALJ also properly concluded that Abrams failed to prove effective enforcement of the relevant safety rules because the participation of a supervisor and multiple subordinate employees in the violations constitutes compelling evidence that Abrams' implementation of safety program was lax; the company failed to prove that it had ever disciplined an employee for violating its trenching or ladder safety rules before the violations occurred; and substantial evidence supports the ALJ's conclusion that post-inspection discipline alone was insufficient in this case to establish effective enforcement of the applicable safety rules before the violation occurred. *See* Dec. at 23–25.

As a preliminary matter, under longstanding case law, "the fact that a [supervisor] would feel free to breach a company safety policy is strong evidence that implementation of the policy was lax." *Floyd S. Pike Elec. Contractor, Inc. v. OSHRC*, 576 F.2d 72, 77 (5th Cir. 1978) (quoting *Nat'l Realty & Constr. Co. v.*

*OSHRC*, 489 F.2d 1257, 1267 n.38 (D.C. Cir. 1973)).[17] Similarly, employee

misconduct in the presence of a supervisor is further compelling evidence of

ineffective enforcement of an employer's work rules. *See, e.g.*, *TNT Crane &*

*Rigging, Inc.*, 2022 OSHD (CCH) P 33886, 2022 WL 2102910, at *8 (No.

16-1587, 2022) ("[T]he fact that [the employer's] supervisor, *as well as the rest of*

*the crew*, were collectively involved in the violative conduct is evidence of lax

enforcement and attention to . . . safety[.]") (emphasis added) (collecting cases); *4*

*State Trucks*, 22 BNA OSHC 1929, 2009 WL 3361400, at *7 (No. 08–1125, 2009)

(employees' "willingness to break the workrule in the supervisor's presence"

shows "lax enforcement or communication of the workrule").

Thus, because multiple Abrams employees, including a supervisor,

participated in the violations at issue here, Abrams faces an uphill battle to prove

that it adequately enforced its work rule. *See* Dec. at 27 (noting "the onsite

supervisor directed the employee to use the ladder and work in the unprotected

trench"). Indeed, an Abrams supervisor not only oversaw the violative conduct for

---

[17] *See also H.B. Zachry Co. v. OSHRC*, 638 F.2d 812, 819 (5th Cir. 1981)
(summary calendar) (employer has "heightened duty" to ensure proper conduct of
supervisors); *Daisy Cons. Co. v. Sec'y of Labor*, 527 F. App'x 1, 1 (D.C. Cir.
2013) (unpublished) ("It is well-established that when a supervisor is involved [in
the violative conduct] the proof of unpreventable employee misconduct is more
rigorous and the defense is more difficult to establish[.]") (internal quotation marks
and citation omitted).

several hours—he consciously directed it. *See* Tr. 27:11–13, 43:1–2, 43:10, 47:23. And, at no time did the three non-supervisory employees present (Garcia, Ortega, or Cruz) complain about the lack of cave in protection or try to stop the work. Tr. 72:20–73:10.

Yet, far from meeting its heightened burden to prove that it effectively enforced its safety rules given the participation of multiple employees and a supervisor in the violation here, the company in fact introduced no evidence— documentary or otherwise—of specific instances of employee discipline for safety violations prior to the OSHA inspection.[18] As with monitoring, the ALJ properly concluded that this lack of documentation undermined the company's proffered evidence of effective enforcement. *Angel Bros. Enterps.*, 18 F.4th at 832–3; *Gioioso I*, 115 F.3d at 110; *Stark Excavating, Inc.*, 24 BNA OSHC 2215, 2014 WL 5825310, at *6 n.12; *Armstrong Utilities, Inc.*, 2021 OSH CCH P 33855, 2021 WL 4592200; *Rawson Contractors, Inc.*, 20 BNA OSHC 1078, 1081.

Furthermore, the ALJ properly refused to consider documentary evidence purporting to show pre-inspection discipline that Abrams attached to its post-

---

[18] As the ALJ correctly noted, the safety manual J.D. Abrams offered into evidence does not explain the content of its disciplinary program or the consequences for employees who violate company safety rules. Dec. at 9 n.18. It plainly does not document specific instances of pre-inspection discipline or constitute evidence of pre-inspection discipline.

hearing brief after having failed to introduce the documents into evidence as exhibits during the hearing. Dec. at 25 n.21 (explaining Abrams' "attempt to shoehorn information, outside the hearing, into the record [was] improper"); *see also* Pet. Post-Hrg. Br. at 16 n.5 (conceding documents were "not introduced as exhibits at trial"). The ALJ's decision to exclude this improperly-submitted evidence was consistent with applicable law and well within his discretion. *See, e.g.*, Fed. R. Evid. 103 (rules regarding admission or exclusion of evidence), 901 (requiring authentication of evidence); 29 C.F.R. § 2200.70 (requiring identification of exhibits); *Ivy v. Mississippi*, No. 3:13-cv-233, 2016 WL 5375764, at *6 (N.D. Miss. Sept. 23, 2016) ("A party cannot make something part of the record by simply attaching it to his brief."); *UNF West, Inc. v. NLRB*, 844 F.3d 451, 463-64 (5th Cir. 2016) ("The ALJ enjoys wide discretion to exclude irrelevant or otherwise inadmissible evidence. . . . Thus, the ALJ did not abuse his discretion in excluding the proffered evidence."); *United States v. Meyer*, 63 F.4th 1024, 1040 (5th Cir. 2023) ("We review a preserved objection to a trial court's evidentiary ruling under an abuse of discretion standard.").

The company's extraordinary claim that the ALJ erred by excluding the documents it attached to its post-trial brief on the novel theory that they were "incorporated into the Secretary's trial evidence," Pet. Br. at 29–30, is wholly

meritless.[19] The company cites no authority to support this assertion, nor could it.

The Federal Rules of Evidence, applicable to Commission proceedings under 29

C.F.R. § 2200.71, plainly establish that all evidence must be identified,

authenticated, and admitted into the record.[20] *See* Fed. R. Evid. 103, 901; *see also*

---

[19] In addition to now claiming that the ALJ erred by excluding extra-record evidence it offered "to the extent the Court deems . . . relevant," Pet. Post-Hrg. Br. at 16 n.5, Abrams attempts to lay blame with the Secretary for not introducing evidence the company considers favorable to its affirmative defense, and to clean up testimony it considers to be unfavorable. Specifically, Abrams claims the Secretary "concealed" evidence by "fail[ing] to include all responsive documents referenced in the written discovery responses." Pet. Br. at 30–31. The company cites no authority for the bizarre and incorrect proposition that a party introducing an opponent's discovery responses must also introduce "all responsive documents referenced in [those] responses." *Id.* Nor did the Secretary "conceal exculpatory evidence" by declining to introduce at trial records that Abrams itself produced. *See id.* Abrams' allegation that the Secretary "inappropriately led a layperson witness through a series of confusing discovery-related questions" to conclusions regarding what Abrams produced in discovery, Pet. Br. at 31–35, mischaracterizes the process of cross-examination, and in any case is misplaced.  There was nothing improper about the Secretary questioning a company executive about the content of discovery responses he participated in preparing. Tr. 143:11–16 (Zbranek participated in responses). To the extent Zbranek disagreed with questions posed by counsel, he was free to state so; to the extent counsel for Abrams believed that questioning elicited inaccurate testimony, she was free on redirect to correct any inaccuracies and introduce the disputed documents into evidence. *See* Tr. 158:6–8 (declining redirect).

[20] Even if the documents the company attached to its post-hearing brief were part of the record in this case, which they are not, they do not establish effective pre-inspection discipline: All or nearly all of the eight incidents disclosed in the records involve infractions unrelated to safety standards—for example, poor performance, lack of a required skill, insubordination, or property damage—and half of them post-date the inspection in this case. *See Florida Gas Contractors,*

Fed. R. App. P. 10(a) (record on appeal consists of "the original papers and exhibits filed in the district court").

Abrams' assertion that testimony by the CSHO and Zbranek establish effective pre-inspection enforcement of its safety rules mischaracterizes the CSHO's testimony and overstates the significance of Zbranek's testimony. The CSHO testimony cited by Abrams consists of a single sentence: "I have seen the disciplinary records that were provided to us." Pet. Br. at 35 (quoting Tr. 117:1–7). That testimony discloses nothing about the content of those records. It does not disclose whether and what type of discipline was imposed, on whom; whether any such discipline related to safety enforcement, much less the type of work rules at issue in this case; and whether any such discipline pre-dated the inspection here. In short, it does nothing to prove Abrams' defense.

The testimony from Zbranek on which Abrams relies consists in substance of a single conclusory statement that the company has disciplined some employees at some point in the past for safety violations: "So we have -- we have numerous instances where -- where other reports have been issued for other violations or

---

*Inc.*, 2019 OSHD (CCH) P 33709, 2019 WL 995716 (No. 14-0948, 2019) (excluding from consideration a disciplinary record that "does not constitute enforcement of a safety rule"); *Cooper/T. Smith Corp. d/b/a Blakeley Boatworks, Inc.*, 29 OSHD (CCH) P 33784, 2020 WL 1692541, at *2 (No. 16-1533, 2020) (disciplinary records issued after inspection not relevant).

trenching, whatever, but for violations of the safety policy." Tr. 146:21–24; *see also* Pet. Br. 36 (citing Tr. 146:12–147:2). Zbranek's generalized, self-serving statement failed to identify any specific instances of discipline for relevant work rule violations, and falls far short of the company's heightened burden to prove this element in the face of widespread employee non-compliance.

Given that the record contains no evidence of specific instances of pre-inspection discipline, longstanding Commission and Fifth Circuit case law supports the ALJ's conclusion that evidence of post-inspection discipline alone was insufficient to carry the company's burden in this case. *Precast Services, Inc.*, 17 BNA OSHC 1454, 1456 (No. 93-2971, 1995) (finding ineffective enforcement due to employer's failure to adduce evidence of discipline for safety rule violations "prior to this job"); *TNT Crane & Rigging, Inc.*, 2022 OSHD (CCH) P 33886, 2022 WL 2102910, at *8 (same); *Cooper/T. Smith Corp. d/b/a Blakeley Boatworks, Inc.*, 29 OSHD (CCH) P 33784, 2020 WL 1692541, at *2–*3 (No. 16-1533, 2020) (same, noting employer's evidence must "include proof that the employer uniformly and effectively enforced its work rules prior to the misconduct"). The only specific enforcement examples Abrams even identified in the record were the disciplinary actions against Rivera and Garcia following the inspection in this case. *See* Dec. at 23–24; Pet. Post-Hrg. Br. at 16–17. While the ALJ acknowledged that Commission precedent allowed him to consider

post-inspection discipline, Dec. at 24, his conclusion that evidence of post-inspection discipline was insufficient by itself to establish effective enforcement of safety rules in this case—involving a 500-employee company in operation for multiple decades—is consistent with that precedent. *See* Tr. 123:6–9, 119:16–7.

Abrams' alternative assertion that the absence of pre-inspection discipline should not be held against the company because it reflects the Abrams' stellar safety record, Pet. Br. at 36–37, must also fail because it is simply implausible that a company with 500 employees that has been performing hazardous construction work for decades has never had any OSHA violations warranting discipline other than those discovered during the instant OSHA inspection. This Court rightly rejected that very argument in *Angel Brothers Enterprises*, explaining that the Commission "did not have to accept" the "statistically implausible claim" that a similarly large construction company had no prior safety violations other than those identified by OSHA.[21] 18 F.4th at 833; *see also TNT Crane & Rigging, Inc.*, 2022 OSHD (CCH) P 33886, 2022 WL 2102910, at *8 (finding it "highly unlikely" that crane-industry employer with more than 250 employees had no

---

[21] It also follows from Abrams' argument that a company could always show that it had effectively enforced its safety rules even if it did so only after OSHA issued the given citation.

employees previously violate the relevant work rules).  Abrams has approximately

500 employees and has been in operation for multiple decades. Tr. 123:6–9,

119:16–7. Under these circumstances, the ALJ did not err in concluding Abrams'

failure to introduce any documentation of prior discipline undermined its claim of

effective enforcement.[22]

Substantial evidence thus supports the ALJ's conclusion that Abrams did not

prove that it adequately enforced the applicable work rules to establish the fourth

---

[22] Elsewhere in its brief, Abrams cites two Commission decisions for the proposition that post-inspection discipline alone *is* sufficient to show effective enforcement. Pet. Br. at 25 (citing *Aquatek*, 21 BNA OSHC 1400 (No. 03-1351, 2006); *Stahl Roofing*, 19 BNA OSHC 2179 (Nos. 00-1637 & 01-1268, 2003)). Neither case supports the proposition that such evidence, without more, is *necessarily* sufficient, and the precedent of this Court and the Commission clearly establish the contrary. *See Angel Bros. Enters..* 18 F.4th at 833; *TNT Crane & Rigging, Inc.*, 2022 OSHD (CCH) P 33886, 2022 WL 2102910, at *8; *Precast Serv., Inc.*, 17 BNA OSHC 1454, 1456. In addition, to the extent that *Stahl* and *Aquatek* stand for the proposition that evidence of post-inspection discipline *may* be sufficient, those cases are readily distinguishable. The issue in *Stahl* involving evidence of discipline was whether an employer had constructive knowledge of the violation—not whether the employer proved the enforcement element of its employee misconduct defense—which is evaluated according to a different legal standard with a different party (the Secretary) bearing the burden of proof. In *Aquatek* the company at issue had "a total of four employees," including the owner and his brother, and the employee responsible for monitoring safety compliance testified that he had not previously observed a violation of the relevant work rule. 21 BNA OSHC 1400, 2006 WL 305302, at *2. Here, as in *Angel Brothers Enterprises*, the employer has hundreds of employees and has been in operation for multiple decades, and it is implausible to infer that safety violations only occurred when OSHA was present to detect them. 18 F.4th at 833–35.

element of its employee misconduct defense, and that for this reason, too, its

employee misconduct defense fails.

### III. Substantial Evidence Supports the ALJ's Conclusion that the Violations Were "Serious" as Defined Under the OSH Act Because a Trench Cave-In or Fall from a Ladder Would Have the Probable Consequence of Broken Bones or Other Serious Physical Harm.

A violation is serious under the OSH Act if "there is a substantial probability

that death or serious physical harm could result." 29 U.S.C. § 666(k). "Serious

injury" includes such injuries as "broken bones." *Southern Hens, Inc. v. OSHA*,

930 F.3d 667, 682 (5th Cir. 2019).

"The Secretary must show that death or serious physical harm is a probable

consequence *if an accident results* from the violative condition; [she] is not

required to show that an accident is itself likely." *Home Rubber Company, LP*,

2021 OSHD (CCH) P 33853, 2021 WL 3929735, at *5 (17-0138, 2021) (emphasis

added); *Sw. Bell Tel. Co. v. Chao*, 277 F.3d 1374, 2001 WL 1485847, at *7 (5th

Cir. 2001) (per curiam) (unpublished) ("[T]he seriousness of a violation does not

turn on the *probability of the event* itself, but the *seriousness of the harm* that could

result.") (emphasis in original). A violation thus is properly classified as serious

"where, although the accident itself is merely possible there is a substantial

probability of serious injury *if it does occur*." *Excel Modular Scaffold & Leasing

Co. v. OSHRC*, 943 F.3d 748, 757 (5th Cir. 2019) (emphasis added); *Sw. Bell Tel.*,

2001 WL 1485847, at *7 ("The Commission was reasonably entitled to consider

the low probability of accident irrelevant under [existing precedent].") (citing *Turner Commc'ns Corp. v. OSHRC*, 612 F.2d 941, 944–45 (5th Cir. 1980)). "This court defers to the Commission's severity classifications to the extent such classifications of violations are 'supported by substantial evidence in the record as a whole, even if the court could reach a different result de novo.'" *Sw. Bell Tel.*, 2001 WL 1485847, at *7 (quoting *Donovan v. Daniel Constr. Co.*, 692 F.2d 818, 820 (5th Cir. 1982)).

Substantial and indeed uncontroverted evidence supports the ALJ's conclusion that the violations here were serious. Regarding the lack of cave-in protection, a cave-in of the trench here could result in "[c]ontusions, lacerations, fractures, suffocation, potentially death." Tr. 86:13–14; *see also* Tr. 67:5–9 (Rivera agreed that during a cave-in "an employee in the trench could get crushed and die"); *DiGioia Bros. Excavating, Inc.*, 17 BNA OSHC 1181, 1184 (No. 92-3024, 1995) (trench cave-in could result in serious injury or death).

Regarding the ladder violation, the uncontroverted testimony of the CSHO was that a fall from ladder could result in contusions, fractures, and concussions. Tr. 94:15–16. Indeed, a Fifth Circuit panel in an unpublished decision affirmed the serious classification of this same violation under nearly identical circumstances. *See Sw. Bell Tel.*, 2001 WL 1485847, at *7–*8 (concluding fall from ladder extending less than three feet above an excavated trench could result in a "serious

38

broken bone" and was properly deemed serious); *see also Brock v. L.R. Willson &*
*Sons, Inc.*, 773 F.2d 1377, 1388–88 (D.C. Cir. 1985) (fall from ladder could result
in serious injuries including broken bones); *Reflections Tower Serv., Inc.*, 19 BNA
OSHC 1551, 2001 WL 777056, at *11 (No. 00-1201, 2001) (ALJ) (same); *Siravo
Contracting, Inv.*, 17 BNA OSHC 1013, 1994 WL 659127, at *5 (No. 93-0445,
1994) (ALJ) ("An individual falling 7 feet could sustain serious injuries ranging
from contusions, to sprains, to broken bones or fatalities."). Substantial evidence
thus supports the ALJ's conclusion that the violations here were serious.

Abrams' claim that the violations were not serious because "the contents of
the trench walls were largely solid," and there was therefore "little possibility" of
collapse, Pet. Br. at 38, is unsupported by the record.[23] And, more importantly, it
entirely misses the point. As this Court and the Commission have instructed, the
seriousness of a violation turns on the injuries that could result from an accident "if
[the accident] does occur," regardless of whether such an accident is likely. *Excel*

---

[23] Rivera testified that 18-wheeler trucks drove regularly on the highway
immediately next to the trench; that the trench walls were comprised primarily of
Type B soil; and that the presence of such trucks increased the risk of collapse in
trenches comprised of Type B soil and even more stable grades of soil—even
when, as here, the trench wall is topped off by a layer of sidewalk. *See* Tr.
44:1-46:11, 67:16-6810. Furthermore, Zbranek testified that he did not know
whether the soil was previously disturbed by prior work, which may further
increase the likelihood of collapse. 143:1–6.

*Modular Scaffold*, 943 F.3d 748 at 757; *accord Sw. Bell Tel.*, 2001 WL 1485847, at *7; *Home Rubber Company, LP*, 2021 OSHD (CCH) P 33853, 2021 WL 3929735, at *5. For the same reason, Abrams' argument that the violations are not serious because the exposed employee spent "minimal time" in the trench or on the ladder, and was therefore unlikely to sustain an injury, *see* Pet. Br. at 40, is also fundamentally misplaced (in addition to factually inaccurate[24]). Finally, the reasons Abrams' supervisor chose not to use a trench box, or the purported dangers of using a trench box, *see* Pet. Br. at 38–39, have no bearing on what injuries are the probable consequence of an accident.

Substantial evidence thus supports the ALJ's conclusion that the violations were serious because uncontroverted testimony showed that serious physical harm would be the probable consequence if a trench cave-in or fall from a ladder were to occur.

**IV.    The ALJ Did Not Abuse His Discretion in Assessing the Penalty Because the Company is a Large Employer, the Violations Here Exposed an Employee to Cave-In and Fall Hazards for Approximately Six Hours, and the Violations Were Directed By a Supervisory Employee.**

The ALJ did not abuse his discretion in assessing a $13,474 penalty for the two serious violations here. In assessing a penalty amount, the Commission gives

---

[24] The undisputed evidence from Rivera's testimony was that Garcia was exposed for between five to six-and-a-half hours. Tr. 27:5–13.

"due consideration" to the factors identified in 29 U.S.C. § 666(j): (1) business size; (2) the gravity of the violation; (3) the good faith of the employer; and (4) the history of previous violations.

This Court reviews the Commission's penalty assessment based on a deferential "abuse of discretion" standard and will affirm the assessment "even if [the Court] would not have assessed a penalty in the same amount." *Capform, Inc. v. Chao*, No. 01-60417, 2002 WL 35650276, at *2 (5th Cir. Mar. 20, 2002) (per curiam) (unpublished) (citing *Shaw Constr., Inc. v. OSHRC*, 534 F.2d 1183, 1185 (5th Cir. 1976)). "This and other courts of appeals have a long history of according great deference to the Commission's judgment as to the appropriate penalty when . . . the Commission gives consideration to the statutory factors, and when the penalty amounts fall within the statutory mandate." *Sw. Bell Tel.*, 2001 WL 1485847, at *8.

The ALJ properly addressed each of the Section 666(j) factors and found that a penalty of $13,474—consisting of $7,711 for the cave-in protection violation and $5,783 for the ladder violation—was supported by those factors. *See* Dec. at 26–27. The ALJ reasonably determined that no reduction for company size is warranted here because Abrams is a large company with around 500 employees. Tr. 123:6–9. The ALJ's determination of moderate and low gravity were not

excessive because the violations here exposed an employee to serious cave-in and

fall hazards for a period of around six hours. *See* Tr. 27:5–13.

Finally, while acknowledging that the company had no history of prior

violations, *see* Dec. at 27 n.24, the ALJ was within his discretion to determine that

no penalty reduction for good faith was warranted because the violations were

directed and observed throughout by Abrams' onsite supervisor.[25] *See* Dec. at 27.

The Commission has routinely declined to apply a penalty reduction for good faith

where, as here, a company supervisor was partially responsible for the violation.

*See, e.g.*, *Burkes Mechanical, Inc.*, 21 BNA OSHC 2136, 2007 WL 2046814, at *9

(No. 04-475, 2007); *Gen. Motors Corp.*, 22 BNA OSHC 1019, 2007 WL 4350896,

at *38 (Nos. 91-2834E & 91-2950, 2007); *see also Oil Sales & Processing Corp.*,

5 BNA OSHC 1512, 1976 WL 21659, at *6 (No. 12139, 1976) (ALJ).

The ALJ also properly rejected Abrams' argument that it was entitled to a

good faith reduction for having a safety policy because that safety policy was

---

[25] Abrams' assertion that the penalty amount was inappropriate because the *CSHO* believed the company had received a prior citation, Pet. Br. at 39, lacks merit because the ALJ did not rely on that conclusion. *See* Dec. at 27 n.24 ("There was some discussion during the hearing as to whether Abrams had been cited by OSHA previously. The Secretary conceded there was no documentation in the hearing record that Abrams had any prior citations."). Moreover, the ALJ noted that, in accordance with Commission precedent, he gave no deference to the CSHO's proposed penalty. Dec. at 26 (citing *Hern Iron Works*, 16 BNA OSHC 1619, 1621 (No. 88-1962, 1994)).

incomplete. *See supra* Part I; Dec. at 27 (citing *Capform, Inc.*, 19 BNA OSHC 1374, 1378 (No. 99-0322, 2011), *aff'd* 34 F. App'x 152 (5th Cir. 2002), for the proposition that "a reduction for good faith inappropriate where safety program did not fully address the hazard"). Abrams' contention that the penalty was inappropriate because the "minimal time" the exposed employee spent in the trench and on the ladder meant "there was little possibility . . . that death or serious physical harm could have resulted" is likewise without merit. Dec. at 40. Abrams fails to explain how that assertion, even if true, shows that anything about the ALJ's analysis was flawed much less an abuse of discretion. Nor does the company cite any authority to show that the penalty amounts here should be reversed on this Court's deferential review. *See Sw. Bell Tel.*, 2001 WL 1485847, at *8.

In sum, the ALJ properly applied the § 666(j) factors and was well within his discretion to assess a penalty of $13,474 for the serious violations at issue here.

## <u>Conclusion</u>

For the foregoing reasons, the Court should deny the petition for review and affirm the Commission's final order.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
Occupational Safety and Health

LOUISE M. BETTS
Acting Counsel for
Appellate Litigation

JOSEPH M. BERNDT
Senior Attorney

<u>s/Jordan Laris Cohen</u>
JORDAN LARIS COHEN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., NW, S-4004
Washington, DC 20210
(646) 264-3614
cohen.jordan.l@dol.gov

*Attorney of record for*
  *Respondent Secretary of Labor*

# CERTIFICATE OF COMPLIANCE

I certify that this brief is produced using Microsoft Word, 14-point typeface, and complies with the type volume limitation prescribed in Fed. R. App. P. 32(a)(7)(B), because it contains 10,996 words, excluding the material referenced in Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft 365 Word with 14-point Times New Roman.

*s/*Jordan Laris Cohen
JORDAN LARIS COHEN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(646) 264-3614
cohen.jordan.l@dol.gov

*Attorney of record for
Respondent Secretary of Labor*

May 15, 2023

45

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2023, a copy of the foregoing brief was

served on counsel for Petitioner J.D. Abrams, L.P., via the Court's CM/ECF

Electronic Filing System and via email to the following persons:

Kelli C. Fuqua
Steven Randolph McCown
Littler Mendelson, P.C.
Suite 1500, LB 116
2001 Ross Avenue
Dallas, TX 75201
kfuqua@littler.com
smccown@littler.com

*s/*Jordan Laris Cohen
JORDAN LARIS COHEN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(646) 264-3614
cohen.jordan.l@dol.gov

*Attorney of record for*
  *Respondent Secretary of Labor*

May 15, 2023